UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 05-61959-CIV-MARRA/JOHNSON

WINNIEFRED RAMSAY,

      Plaintiff,

v.

BROWARD COUNTY SHERIFF'S
OFFICE, et al.,

      Defendants.

_____/

## OPINION AND ORDER

THIS CAUSE is before the Court on Defendant Broward County Sheriff's Office's

Motion for Summary Judgment (DE 112), filed October 4, 2007.  The motion is now fully

briefed and is ripe for review.  The Court has carefully considered the motion and is fully advised

in the premises.

## Background

*Pro se* Plaintiff Winniefred Ramsay ("Plaintiff" or "Ramsay") filed the instant complaint

on June 11, 2007, in response to this Court's Order of May 24, 2007, granting in part and

denying in part Defendant Broward County Sheriff's Office's ("BSO" or "Defendant") motion

for summary judgment (DE 72).  The Court presumes familiarity with that earlier Order.  The

facts have not changed since that Order was entered, and both parties rely on the very same facts

for the instant motion for summary judgment.[1]  Thus, the Court will only provide a limited

_____

[1]Indeed, Plaintiff appears to have submitted an identical Affidavit in Opposition to this
motion as she did in opposition to the first motion.  In addition, Plaintiff also submitted an

summary of the applicable facts in this Order.[2]

Plaintiff is a black Jamaican woman who began working for the BSO as a Child Protective Investigator in 2001, when she was 53 years old.  Until 2005, Plaintiff's supervisor was Janney Spears; Plaintiff alleges that Spears made derogatory age-related comments throughout her employment.  In 2005, Plaintiff was counseled on certain deficiencies in her handling of cases (e.g., failing to meet closure requirements, missing items, time management, etc.).  Shortly thereafter, Plaintiff filed an Age Questionnaire with the Equal Employment Opportunity Commission, alleging age discrimination as well as an internal complaint with the BSO Equal Employment Office.

After filing the complaints, Plaintiff was transferred to another squad within the Child Protective Investigations Section.  Plaintiff alleges she was told that the reason for the transfer was because she filed complaints.  Plaintiff claims she was subjected to continued harassment and humiliation in the new squad.  In 2005, Plaintiff received a poor performance evaluation from Spears.  Plaintiff challenged the evaluation, claiming that Spears had falsified records; Plaintiff's challenge was sustained.

In 2006, Plaintiff was forced to complete a driving course after several automobile accidents; Plaintiff also had several citizen complaints filed against her that year.  Plaintiff claims

---

assortment of other documents in opposition to the instant summary judgment motion.  These documents primarily consist of her own letters and memoranda to Defendant and offer little in the way of substantive support for Plaintiff's arguments.  Again, as in the previous summary judgment motion, it appears that Plaintiff wholly disregarded the discovery process and has failed to produce any material evidence to oppose summary judgment.

[2]For a full recitation of the facts, see *Ramsay v. Broward County Sheriff's Office*, No. 05-61959, Order and Opinion Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (DE 72).

that her supervisors encouraged citizens to file complaints, though she has no evidence that BSO in any way influenced those complaints.  Plaintiff was placed on administrative leave and suspended.  That same year, Plaintiff applied for the position of Child Investigative Specialist. Plaintiff was not given the position, because she did not receive a "passing performance" on the interview; instead, a younger Caucasian woman named Vicki Ware was given the position. Plaintiff was fired from the BSO on November 1, 2006.

In her Complaint, Plaintiff pleads four counts: one count under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* and three counts under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, ("Title VII") for race discrimination, national origin discrimination, and retaliation.  Defendant claims that summary judgment is appropriate because Plaintiff is barred as a matter of law by the doctrine of res judicata from asserting a hostile work environment claim and because Plaintiff's factual allegations fail to establish any of the above claims as a matter of law.[3]

## Standard of Review

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[3]Plaintiff also asserted her claims against three individual Defendants, Rickey Clarke, Danny Wright, and John Auer.  Defendant Rickey Clark has not been served.  Defendants Danny Wright and John Auer were dismissed from the case by this Court's Order of November 15, 2007.  (DE 121.)

3

323(1986).  The Court should not grant summary judgment unless it is clear that a trial is

unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this

regard should be resolved against the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

157 (1970).

      The movant "bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  To discharge this

burden, the movant must point out to the Court that there is an absence of evidence to support the

nonmoving party's case.  *Id.* at 325.  After the movant has met its burden under Rule 56(c), the

burden of production shifts and the nonmoving party "must do more than simply show that there

is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ.

P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse

party's pleadings," but instead must come forward with "specific facts showing that there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

      Essentially, so long as the non-moving party has had an ample opportunity to conduct

discovery, it must come forward with affirmative evidence to support its claim.  *Anderson*, 477

U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not

suffice; there must be a sufficient showing that the jury could reasonably find for that party."

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-

moving party "is merely colorable, or is not significantly probative, then summary judgment may

be granted." *Anderson*, 477 U.S. 242, 249-50.

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.,* 138 F. 3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). The Court must "avoid weighing conflicting evidence or making credibility determinations." *Hilburn v. Murata Electronics N. Am., Inc.*, 181 F. 3d 1220, 1225 (11th Cir. 1999). Rather, the determination is whether there are any genuine issues of fact which should properly be resolved by the fact finder because they can be resolved in favor of either party. *Anderson*, 477 U.S. at 250.

## Discussion

### Age Discrimination in Employment Act Claims

Plaintiff bears the burden of proving that age was the determining factor in the discrimination, and must establish a prima facie case of discrimination. This may be done by presenting evidence on one of three methods: direct evidence of discriminatory intent; statistical evidence; or the burden-shifting analysis established by *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)*, which allows a party to introduce circumstantial evidence that raises a rebuttable presumption of intentional discrimination. *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1555-56 (11th Cir. 1995); *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). To establish a prima facie case of age discrimination using circumstantial evidence applying the *McDonnell Douglas* framework, a plaintiff must show that she was (1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) lost the position to a younger individual. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Chapman v. AI Transport,* 229 F.3d 1012, 1024-25 (11th Cir. 2000).

"Under the burden-shifting *McDonnell Douglas-Burdine* framework for analyzing pretext claims, the plaintiff first must create an inference of discrimination by establishing a prima facie case by a preponderance of the evidence." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993); *Equal Employment Opportunity Commission v. Ethan Allen, Inc.*, 44 F.3d 116, 119 (2d Cir. 1994). "The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action." *Ethan Allen*, 44 F.3d at 119. "Finally, the plaintiff then is accorded an opportunity to demonstrate that the defendant's articulated rationale was merely a pretext for discrimination." *Id.*

Plaintiff has pled one count under the ADEA. However, reading the Complaint liberally as this Court is required to do for a *pro se* Plaintiff, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), Plaintiff appears to have asserted two separate causes of action under the ADEA. First, Plaintiff alleges age discrimination based on Defendant's failure to promote her to the position of Child Investigative Specialist Supervisor. Plaintiff then alleges disparate treatment of employees based on their age in a variety of circumstances, including Defendant's response to vehicular accidents in agency vehicles and disciplinary procedures. The Court will treat these allegations as separate causes of action under the ADEA.

<u>Failure to Promote</u>

With respect to Plaintiff not being promoted, Defendant does not dispute that Plaintiff meets the first and third requirements, as Plaintiff's age puts her within the protected class and because Plaintiff was not promoted to the position of Child Investigative Supervisor. (Def. Mot. 9.) Defendant challenges the other two prongs, claiming that Plaintiff was not qualified for the promotion and that she lost the position to a younger individual outside of the protected class.

6

Defendant first attacks Plaintiff's prima facie case by pointing to the fact that the person eventually selected for the position for which Plaintiff applied, Vickie Ware, was 44 years old when she applied for the position.  (Def. Ex. 22.)  As Ware is also a member of the class of individuals protected by the ADEA, Defendant reasons that Plaintiff cannot meet her burden of demonstrating a prima facie case because she did not lose the position to someone outside the protected class.  This argument lacks merit.  In *Chapman*, the Eleventh Circuit held that the plaintiff had established a prima facie case of age discrimination based purely on the fact that the individuals selected for the relevant position were younger than the plaintiff.  *Chapman*, 229 F.3d at 1028.  The fact that two of the individuals were over the age of 40 (and themselves protected by the ADEA) was irrelevant to the plaintiff's ability to establish his prima facie case.  *Id.* at 1018, 1028.  Thus, the fact that Vickie Ware was over 40 when she was selected for the position does not matter – the only fact that matters for Plaintiff's prima facie case is that Ware is younger than Plaintiff.  As such, Plaintiff has demonstrated this prong of her prima facie case.

Defendant then challenges Plaintiff's qualifications for the position of Child Investigative Specialist Supervisor.  Defendant states that the position required at least one year of supervisory experience which Plaintiff did not have.  Additionally, Defendant claims Plaintiff was not qualified based on "disciplinary problems . . . including Defendant's receipt of the first of two of what would become numerous citizen complaints."  (Def. Mot. 9.)  Plaintiff responds that she was qualified because she possesses "a Master's Degree in Criminal Justice, a Bachelor Degree in Psychology, a combined total of 8 years of supervisory and management experience along with certification in Basic Supervision I and II and completion of several courses in supervision and management including 'Effective Management.'" (Pl. Resp. 15.)  Plaintiff further claims that she

7

was not hired for the position on the basis of her oral interview; she claims the issue of her citizen complaints is entirely pretextual.  (Pl. Resp. 15-16.)

The Court notes, as an initial matter, that an employee's subjective belief that he or she is qualified for a position is not sufficient to meet this prong of the prima facie case.  *See, e.g., Sembos v. Philips Components*, 376 F.3d 696, 700-01 (7th Cir. 2004) (explaining that a plaintiff's statement that he is qualified for a position without offering affirmative support for that proposition is insufficient as a matter of law).  Here, Plaintiff has recited her resume for the Court, but she has not explained how her background makes her "qualified" for this position.  The job description reads, in pertinent part, as follows: "Bachelor's degree in Social Services, Psychology, Criminal Justice, or related field; supplemented by one (1) to three (3) years progressively responsible supervisory experience *that provides broad knowledge of social service agencies and community resources regarding child protective programs and services* . . . ."  (Def. Ex. 23.)  The Court recognizes that Plaintiff has "supervisory experience" generally defined.  Indeed, Plaintiff listed on her application for the position her experience as a "unit manager" for Barnett Bank of South Florida and her position as head of the Mathematics Department at Cambridge Secondary School in Jamaica.  (Def. Ex. 21.)  However, Plaintiff has not shown how this experience relates to her experience with social service agencies and child protective programs.  The fact that Plaintiff has "management experience" does not mean that she has the specific kind of management experience sought by Defendant.  Neither of these positions provided any experience that could be considered substantially comparable to that sought by Defendant for the position of Child Investigative Specialist Supervisor.  Thus, even though the job description allowed for "equivalents" to experience to be considered, Plaintiff has

not attempted to demonstrate how these earlier jobs were "equivalent" to the required

supervisory experience in the field of social services and community resources.

Further, Plaintiff has not presented any evidence of her own that she meets the

qualifications for the position.  Plaintiff states that her failure to get the promotion was not a

result of her qualifications but due to the fact she did not achieve a "passing performance" on her

oral interview.  (Pl. Resp. 16-17.)  However, the fact that Plaintiff did not achieve a passing score

on her interview is directly related to the fact that she was not qualified for the position.  On the

face of the job description, Plaintiff does not have the required experience.  As such, the Court

concludes that Plaintiff has not presented sufficient record evidence to raise a genuine issue of

material fact relating to age discrimination for Defendant's failure to promote Plaintiff.[4]

Disparate Treatment

The Eleventh Circuit has stated that "[d]isparate treatment claims require proof of

discriminatory intent either through direct or circumstantial evidence."  *EEOC v. Joe's Stone*

*Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).  Using the *McDonnell Douglas* framework to

infer discrimination and establish a prima facie case of disparate treatment, a plaintiff must

demonstrate the following: "(1) she is a member of a protected class; (2) she was subjected to

adverse employment action; (3) her employer treated similarly situated [younger] employees

---

[4]Even if the Court found that Plaintiff had met her burden of establishing a prima facie case, Plaintiff would not be able to prevail on this claim.  Defendant produced age-neutral justifications for Plaintiff's discharge – her lack of qualifications for the job and her performance deficiencies while working for Defendant.  In response, Plaintiff has produced no evidence to meet her burden on the third prong of the *McDonnell Douglas* analysis.  Plaintiff simply makes unsubstantiated allegations that the documents showing her poor performance deficiencies have been fabricated.  (Pl. Resp. 17.)  Thus, the Court additionally finds that Plaintiff has failed to rebut the age-neutral justifications produced by Defendant.

more favorably; and (4) she was qualified to do the job." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11ᵗʰ Cir. 1999).  In this case, the parties do not dispute that Plaintiff was a member of a protected class.  Defendant disputes the other three prongs of the prima facie case.[5]

Defendant only addresses the second prong in passing, and only in the context of Defendant requiring Plaintiff to participate in driving school for her record of vehicular accidents.  Defendant writes, "Plaintiff is unable to demonstrate that remedial driving training constitutes an adverse employment action.  This training was provided as a safety measure, in an effort to assist Plaintiff." (Def. Mot. 12.)  The Eleventh Circuit has adopted an objective test of determining whether an employment action is adverse.  *Doe v. Dekalb County Sch. Dist.*, 145 F. 3d 1441, 1449 (11th Cir. 1998).[6]   A plaintiff must prove that a "reasonable person in his position would view the employment action in question as adverse."  *Id.*  "[N]ot everything that makes an employee unhappy is an actionable adverse action," otherwise "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* (quotations and citations omitted); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) (holding that an employee's distaste for an employer's action is not

---

[5]Defendant appears to challenge Plaintiff's qualifications for the job, but then Defendant devotes no part of its argument to show that Plaintiff is not qualified.  As such, for purposes of this Order, the Court will assume that Plaintiff is qualified for the position she held until she was fired.

[6]       Although the court in *Dekalb County* was addressing an Americans with Disabilities Act ("ADA") claim, it expressly recognized the importance of an objective test to prove an adverse employment action with respect to other types of discrimination claims as well. *Dekalb County*, 145 F. 3d at 1449 ("In our view, this test best reflects our employment discrimination doctrine and precedents.")

sufficient to establish adverse employment action).  "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

Applying the objective test, the Court concludes that requiring Plaintiff to attend driving school is not an "adverse employment action."  Requiring behind-the-wheel safety training is not equivalent to discharge or failure to hire.  Plaintiff was in no way penalized for her required attendance at driving school.  The Court can find no rational reason that would allow an objective individual to conclude that mandatory attendance at safe driving school would constitute an adverse employment action.  As such, Plaintiff's claims of disparate treatment as they relate to her attendance at driving school cannot be used to establish her prima facie case.

Plaintiff does have a legitimate argument that she was subject to an adverse employment action when she was suspended without pay.[7]  Nevertheless, Defendant also challenges the third prong of the Plaintiff's prima facie case, claiming that Defendant did not treat younger, similarly situated individuals more favorably.  To establish that employees are "similarly situated" for purposes of the prima facie case, a plaintiff must show that "there were employees, not within [her] protected class, who were similarly situated in all relevant respects, but who were treated

---

[7]Plaintiff also claims that she was subject to an adverse employment action when she was transferred to a different squad.  The Court already addressed this argument in its previous Order, holding that the transfer was purely "lateral" and thus not an adverse employment action under the ADEA or Title VII.  Plaintiff also claims an adverse employment action from the "harassment, intimidation and humiliation" she experienced on the job.  Again, these items do not create an "adverse employment action" in and of themselves; these items relate to a hostile work environment, which Plaintiff discusses under a separate heading.

more favorably." *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1368 (S.D. Fla. 2001). Generally, similarly situated employees will have reported to the same supervisor, will have been subject to the same disciplinary standards, and will have engaged in substantially similar conduct. *Id.*; *see also Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989). The Eleventh Circuit requires that the "quantity and quality of the comparator's misconduct be nearly identical." *Manicca*, 171 F.3d at 1368.

Plaintiff states that she was similarly situated to Julie Ashleman and Nichole Duchesne,[8] but that these women were not required to attend driving school when they were involved in vehicular accidents. However, Plaintiff has not demonstrated that she and Ashelman were "similarly situated." Plaintiff states simply that "younger employees such as Julie Ashleman who had a total of five accidents . . . were not restricted from driving the agency's vehicles." (Pl. Resp. 20.) Plaintiff also admits that "Julie Ashleman was the employee designated to observe Plaintiff's driving." (*Id.*) Plaintiff provides no evidence, however, to show that Plaintiff and Ashleman were similarly situated. Based on the evidence presented, the Court must conclude that Ashleman and Plaintiff were not similarly situated. The two women were not engaged in substantially similar conduct. Ashelman was an Investigative Training Officer (*see* Def. Ex. 13.); Plaintiff was a Child Protective Investigator. Ashelman was observing Plaintiff's job performance; Plaintiff was driving the car from site to site. Thus, Plaintiff and Ashelman are not similarly situated, and Plaintiff has failed to failed to present record evidence to raise a genuine

---

[8]Defendant asks the Court to disregard any evidence regarding Duchesne, because Duchesne was not identified or disclosed by Plaintiff as a relevant person during discovery. Since Plaintiff has not provided any documentary evidence regarding Nichole Duchesne with which to evaluate her as a comparator, the Court will disregard her as a potential comparator.

issue of material fact relative to this part of her prima facie case.

Plaintiff also claims that she was "similarly situated" to both Stacie Schmerling and Janney Spears and that she was treated differently from those individuals through the BSO's Internal Affairs investigation. Specifically, Plaintiff states that "[t]hey were allowed to remain at the office location throughout the investigation performing their usual job duties but Plaintiff . . . was placed on Restricted Administrative Assignment." (Pl. Resp. 20-21.) Plaintiff also claims that she was denied "a lot of privileges" given to those other two individuals. (Pl. Resp. 21.)

Nevertheless, Plaintiff again fails to make any factual showing to demonstrate that she was similarly situated to either Spears or Schmerling. Spears was Plaintiff's supervisor. (Pl. Dep. 10.) Plaintiff could not be similarly situated to an individual who was her supervisor because they would not have been engaged in the same conduct and they would not have reported to the same supervisor.

Schmerling similarly was not similarly situated to Plaintiff. In 2004, Schmerling was promoted to the position of Field Training Investigator. (Def. Ex. 3.) Like Spears, Plaintiff and Schmerling did not hold the same position. Thus, they could not have been subject to the same disciplinary standards from the same supervisor. While their jobs might have been related because both positions required work in the field, the jobs were not "nearly identical."

Bolstering Defendant's case is the fact that Plaintiff cannot be considered similarly situated due to the citizen complaints lodged against her. Only one other individual, Michelle Brimberry, has ever had a citizen complaint "sustained." (Def. Ex. 20.) The Court finds no evidence or suggestion that Spears and Schmerling were ever subject to discipline based on their interactions with citizens. Where one individual has committed multiple infractions but another

13

has not, the two individuals are not similarly situated for purposes of employment discrimination litigation.  *See Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001).

Accordingly, the Court concludes that Plaintiff has not presented sufficient record evidence to raise a genuine issue of material fact relative to her claim of disparate treatment under the ADEA because she has not demonstrated that similarly situated individuals were treated more favorably.

*Title VII Failure to Promote Claim*

Plaintiff next claims that Defendant discriminated against her on the basis of her race and national origin when she was not selected for the Child Investigative Specialist Supervisor position.  Without direct evidence of discrimination, a plaintiff must establish a prima facie case of discrimination using the *McDonnell Douglas* burden shifting framework (as discussed above for ADEA cases).  A plaintiff must first prove that she 1.) is a member of a protected class of minorities; 2.) she was qualified for and applied for the promotion; 3.) she was rejected; and 4.) other equally or less qualified individuals who were not minorities were promoted.  *See Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988).  Once the plaintiff establishes a prima facie case by a preponderance of the evidence, the burden shifts to the employer to articulate (not prove) some legitimate, nondiscriminatory justification for rejection of the plaintiff's application.  If the defendant meets that burden, then the plaintiff must demonstrate that the defendant's proffered reason was pretext (either by offering new affirmative evidence or attacking the credibility of the defendant's proffered reason).  *Id.*; *see also St. Mary's Honor Center*, 509 U.S. at 511.

With respect to Plaintiff's application for the position of Child Investigative Specialist Supervisor, Defendant argues that Plaintiff can only establish the first of the four prongs of her

prima facie case.  Defendant concedes that Plaintiff is both black and of Jamaican origin but challenges the other three prongs.  The Court will examine each in turn.[9]

As was explained above for Plaintiff's ADEA claim, the Court concludes that Plaintiff was not qualified for the position of Child Investigative Specialist Supervisor.  That position required at least a year of managerial experience *in the social services field*.  Plaintiff had the requisite educational experience as well as unrelated managerial experience, but these facets of her resume do not make her "qualified" for the job.  On the face of the job description, Plaintiff is not qualified.  Even assuming Plaintiff was qualified, the person eventually selected (Vickie Ware) was *more* qualified than Plaintiff based on Ware's having been an acting supervisor in the department, making her intimately familiar with the job.[10]  Thus, Plaintiff has failed to establish a prima facie case of race or national origin discrimination for the failure to give her this position.

Plaintiff also argues that she was not chosen to serve as an Officer in Charge because of her race and national origin.  Instead, Stacie Schmerling was granted the promotion.  Plaintiff's argument, however, is totally unsubstantiated by any factual evidence.  Plaintiff has provided no evidence relating to the requirements of the Officer in Charge position, nor has Plaintiff provided any reasons, other than her subjective belief, why she would have been qualified for that position. Moreover, Plaintiff has not provided any evidence as to why Stacie Schmerling was equally or

---

[9]Despite Defendant's claim that Plaintiff has not established the other three prongs, the Court finds that Plaintiff has met the third prong – Plaintiff was clearly rejected for the position. Both sides concede this point.

[10]Plaintiff again attempts to introduce another comparator, Denise Foster-Burkett. Defendant claims that Foster-Burkett was not disclosed during discovery.  Regardless, because Plaintiff has not provided any evidence regarding Foster-Burkett's application for the position, the Court cannot determine whether she is an appropriate comparator.

15

less qualified.[11]  Thus, Plaintiff has failed to present sufficient record evidence to raise a genuine

issue of material fact relative to her claim of race or national origin discrimination for the failure

to give her this position.    As a result, Plaintiff's claims for race and national origin

discrimination under Title VII must fail.

*Title VII Retaliation Claim*

As the Supreme Court has explained, "Title VII's anti-retaliation provision forbids

employer actions that 'discriminate against' an employee (or job applicant) because he has

'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or

participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington Northern and*

*Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2410 (2006) (internal citations omitted).  To establish

a prima facie case for retaliation, Plaintiff must show that 1) she engaged in protected activity; 2)

she suffered a retaliatory act as defined in *White*; and 3) there is some causal relationship

between her protected activity and the retaliatory act.  *White,* 126 S. Ct. at 2412-14; *Holifield v.*

*Reno*, 115 F.3d 1555, 1567 (11th Cir. 1997).

Once the plaintiff has established her prima facie case, the employer must proffer a

legitimate, non-discriminatory reason for the retaliatory act.  *E.E.O.C. v. Reichhold Chemicals,*

*Inc.*, 988 F. 2d 1564, 1571-72 (11th Cir. 1993).  If the employer offers legitimate reasons for the

retaliatory act, the plaintiff must then demonstrate that the employer's proffered explanation is a

pretext for retaliation.  *Holifield v. Reno*, 115 F. 3d 1555, 1567 (11th Cir. 1997) *citing Meeks v.*

---

[11]Defendant, however, has provided ample documentary evidence to show that
Schmerling was qualified for the position.  For instance, Schmerling won the "Employee of the
Month" award for June 2003 (Def. Ex. 4) and also received a very favorable performance
evaluation for 2004 (Def. Ex. 5).

16

*Computer Associates Intern.*, 15 F. 3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F. 2d 1155, 1163 (11th Cir. 1993).

The Supreme Court recently addressed the retaliatory act element of a Title VII retaliation claim in *White*. The Court held that "the scope of [Title VII's] anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and therefore, "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 2412-14. The Court emphasized that the anti-retaliation provision is significantly broader than the anti-discrimination provision and not confined to actions altering workplace conditions. *Id.* at 2411-12.

In defining a retaliatory act, the Court held "[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse" in the sense that it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2414-15. The Court emphasized that "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at 2416. The Court also stressed that the "standard for judging harm must be objective" to avoid the inherent difficulty in interpreting a plaintiff's unusual subjective feelings. *Id.* at 2415. Finally, the Court noted that the standard is tied only to the retaliatory act and not to the underlying conduct that forms the basis for the complaint. *Id.* at 2416.

Plaintiff appears to be claiming retaliation for her filing of two separate complaints with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 57.) The claimed retaliatory acts include "false complaints against Plaintiff by private citizens" and a hostile work

environment.[12]  (Compl. ¶¶ 57, 64.)

The Court has already ruled that "[n]o genuine issue of material fact exists with respect to Plaintiff's claim that Defendant retaliated against Plaintiff by encouraging four private individuals to file complaints against Plaintiff.  As a matter of law, Defendant did not retaliate against Plaintiff when four private citizens filed complaints against Plaintiff."  (Order 32.)  Thus, the mere fact that these complaints were filed does not constitute retaliation.  Plaintiff now argues that "[i]t is the deliberate biased investigations by Defendant resulting in Plaintiff's suspension for three days and Plaintiff's job termination is the pretext for retaliation."  (Pl. Resp. 30.)  Yet Plaintiff continues to try and argue about whether these citizen complaints were encouraged by her supervisors.  Plaintiff writes, "Ii [sic] is only at trial that Plaintiff will be able to prove whether or not these complainants who Plaintiff had intended to call as witnesses were encouraged to file these complaints."  (Pl. Resp. 30.)  The Court can only conclude that Plaintiff is again trying to argue that she was retaliated against because her supervisors encouraged private citizens to file complaints.  As Plaintiff has presented no new arguments or evidence to support this claim, the Court reiterates its prior holding that, as a matter of law, no genuine issue of

─────────────────

[12]Plaintiff devotes a lengthy portion of her Complaint to the issue of a hostile work environment.  (*See* Compl. ¶¶ 13-28.)  However, Plaintiff did not bring any specific counts alleging a hostile work environment.  Regardless, the Court previously ruled that Plaintiff had not been subjected to a hostile work environment due to age-related comments.  (*See* Order 24.)  The facts have not changed, and the Court reiterates its earlier ruling that, as a matter of law, Plaintiff's work environment was neither hostile or abusive.  Similarly, Plaintiff cannot establish a claim of hostile work environment on the basis of race or national origin.  Plaintiff has only supplied conclusory allegations of a hostile work environment without any record evidence to substantiate any such claims on the basis of race or national origin.  Indeed, Plaintiff provided *more* evidence relating to a hostile work environment on the basis of age, but the Court found this evidence insufficient as a matter of law.  As such, the Court declines to address these unsupported allegations of a hostile work environment on the basis of race and national origin in the instant analysis.

material fact exists with respect to Plaintiff's claim that Defendant retaliated against Plaintiff by encouraging private individuals to file complaints against Plaintiff.

Plaintiff claims "retaliation" through a variety of adverse actions that created a hostile work environment: suspension for three days without pay due to the "biased investigations into citizens complaints"; denial of a promotion to Protective Investigative Supervisor; negative performance evaluations; "fabricated violations of Agency's policies resulting in denial of privileges" when an Internal Affairs investigator allegedly "fabricated a statement" that Plaintiff falsified her own daily activities logs; dismantling of the squad to which Plaintiff was assigned; requiring Plaintiff to attend driving school; and termination of Plaintiff's employment.  (Pl. Resp. 31-32.)

Requiring Plaintiff to attend mandatory driver's education training is not "materially adverse" such as to constitute retaliation.  Plaintiff has supplied no record evidence to suggest that a "reasonable employee" would have been dissuaded by a driving school requirement from bringing a claim of discrimination.  Plaintiff was paid her regular salary for time spent on driving lessons, and Plaintiff even stated in her deposition that she did not object to the additional training.[13]  In response, Plaintiff offers only her conclusion that the driver education requirement was materially adverse, but she fails to articulate any objective reason as to how she reaches this conclusion.  Instead, Plaintiff's conclusion seems to be little more than her own subjective belief that the driver training was materially adverse and retaliatory.  Because Plaintiff has failed to produce any record evidence raising a genuine issue of material fact as to whether a mandatory

_____

[13]"So I decided to go because to me [driver training] wasn't a big deal because everybody can do with a little remedial things sometimes.  That's nothing.  Look how many years ago I had my license." (Pl. Dep. 119.)

driver's education requirement is materially adverse, the Court finds that Plaintiff cannot sustain a claim of retaliation based on being required to complete a driving class.

With respect to the other retaliatory acts, Plaintiff has alleged both statutorily protected activity and an adverse employment action.  Plaintiff must also demonstrate a causal link between the participation in statutorily protected activity and the adverse employment action. The "causal link" only requires that "the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1189 (11th Cir. 1985).  To demonstrate that the two acts are related, the plaintiff "must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Plaintiff's primary argument to demonstrate a causal link appears to be the temporal proximity of her EEOC complaints to the alleged adverse employment actions.  (*See* Pl. Resp. 32.)  Temporal proximity can demonstrate causation, but when a plaintiff relies on temporal proximity alone, the space in time between the engagement in statutorily protected activity and the retaliatory act must be "very close."  *Thomas v. Cooper Lighting*, No. 07-10233, slip op. at 5 (11th Cir. Nov. 9, 2007); *see also Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001); *Brungart,* 231 F.3d at 799.  "Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Cooper Lighting*, No. 07-10233, slip op. at 5.

The Court finds that Plaintiff can rely on temporal proximity to show causation between

her second EEOC complaint, filed on June 9, 2006, and her three day suspension without pay from June 20 to June 22, 2006.  However, none of the other "adverse actions" about which Plaintiff complains are temporally related to her complaints.  For instance, Plaintiff did receive a poor performance evaluation on June 1, 2005, but this evaluation was received almost six weeks after she filed her first EEOC complaint on April 21, 2005.  The span of time between these two events is too attenuated to allow Plaintiff to rely on temporal proximity to show causation.

Furthermore, Plaintiff also fails to demonstrate (or even allege) that Defendant was even aware of her EEOC complaints.  The Court can find no evidence or allegation that Defendant was aware of the EEOC complaints until Plaintiff received her right to sue letters and initiated her two individual lawsuits.  Since Plaintiff has presented no evidence to show that Defendant was even aware of the complaints, under *Brungart*, Plaintiff may not rely on the presumption of causation from temporal proximity.  Additionally, because Defendant has produced unrebutted evidence that it contemplated the adverse actions in question before Plaintiff filed her EEOC complaints, Plaintiff may not rely on temporal proximity to show causation.  *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (explaining that "temporal proximity between the protected activity and the subsequent adverse employment action" will not show causation when the employer contemplated the adverse employment action before the employee engaged in statutory activity).  Because Plaintiff has failed to provide any probative evidence regarding causation, the Court holds as a matter of law that Plaintiff has not demonstrated causation and, as such, has not established a prima facie case of retaliation.[14]

_____

[14]Even if the Court were to hold that Plaintiff had established her prima facie case, Defendant produced legitimate reasons for all of the "adverse actions" about which Plaintiff complained.  Reaching the third stage of the *McDonnell Douglas* analysis, Plaintiff has produced

## Conclusion

Plaintiff has produced practically no evidence in support of her claims.  The Court finds that Plaintiff has not made a sufficient showing that a rational trier of fact could find for the Plaintiff.  As such, Defendant's Motion for Summary Judgment is **GRANTED** as follows:

1.  No genuine issue of fact exists as to whether Defendant failed to promote Plaintiff to the position of Child Investigative Specialist Supervisor on the basis of her age.  As a matter of law, Defendant did not discriminate against Plaintiff in violation of the ADEA on this ground.

2.  No genuine issue of fact exists as to whether Defendant treated similarly situated, younger individuals more favorably than Plaintiff.  As a matter of law, Defendant did not discriminate against Plaintiff in violation of the ADEA on this ground.

3.  No genuine issue of fact exists as to whether Defendant failed to promote Plaintiff to the position of Child Investigative Specialist Supervisor on the basis of her race or national origin. As a matter of law, Defendant did not discriminate against Plaintiff in violation of Title VII on this ground.

4.  No genuine issue of fact exists as to whether Defendant retaliated against Plaintiff for filing complaints with the EEOC.  As a matter of law, Defendant's actions were not causally related to Plaintiff's exercise of statutorily protected activity and, as such, Defendant did not retaliate against Plaintiff on this ground.

Defendant's Motion to Strike Plaintiff's Response to Defendant's Reply Memorandum

---

no evidence to show pretext other than her own fervent belief and various conclusory allegations. Plaintiff again produced no evidence or arguments to create an issue of fact as to Defendant's justifications.  Either way, Plaintiff has failed as a matter of law to establish her claim for retaliation.

(DE 123) is **DENIED AS MOOT**.  Final judgment in this case will be entered by a separate

order.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 7th day of January, 2008.

                                            _____

                                            KENNETH A. MARRA
                                            United States District Judge

Copies furnished to:
all counsel of record
Winniefred Ramsay, *pro se*

23